UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | | |
|---|---|---|
| FERNANDO MORALES, | | No. C 14-03081 LB |
| | Plaintiff(s), | **ORDER DENYING NATIONSTAR'S MOTION TO DISMISS** |
| v. | | |
| NATIONSTAR MORTGAGE LLC, | | [Re: ECF No. 22] |
| | Defendant(s). | |

## INTRODUCTION

Plaintiff Fernando Morales has sued Defendant Nationstar Mortgage LLC ("Nationstar") for its failure to accept his timely mortgage payments, even though he is current on his mortgage loan and is not in default. This, he alleges, is a breach of the deed of trust and of the covenant of good faith and fair dealing, and is in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq. Nationstar moves to dismiss Mr. Morales's claims. Pursuant to Civil Local Rule 7-1(b), the court found this matter suitable for determination without oral argument and vacated the November 6, 2014 hearing. Upon consideration of the papers submitted and the applicable authority, the court **DENIES** Nationstar's motion.

## STATEMENT

On or about June 23, 2006, Mr. Morales refinanced property located at 161 Boutwell Street, San

1  Francisco, California 94124 (the "Property"). First Amended Complaint ("FAC"), ECF No. 18 at 3.[1]
2  In doing so, he executed a promissory note ("Note") and a deed of trust ("Deed of Trust"). *Id.*; *see*
3  *also* Request for Judicial Notice ("RJN"), Ex. A (Deed of Trust), ECF No. 23-1.[2] Under the Deed of
4  Trust, Mr. Morales was the borrower, Alternative Financing Corporation was the lender, First
5  American Title was the trustee, Mortgage Electronic Registration Systems, Inc. ("MERS") was the
6  beneficiary. Deed of Trust, ECF No. 23-1 at 2. Pursuant to the Promissory Note and Deed of Trust,
7  Mr. Morales "promised to pay [$415,000.00] in regular Periodic Payments and to pay the debt in full
8  not later than August 1, 2036." *Id.* at 3. The Deed of Trust "secure[d] to Lender: (i) the repayment
9  of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of
10 Borrower's covenants and agreements under [the Deed of Trust] and the Note." *Id.* at 3-4.

11     The Deed of Trust also contained numerous "uniform covenants." *Id.* at 4-12. The ones at issue

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the ECF-generated page numbers at the top of the document.

[2] Nationstar asks the court to take judicial notice of the following documents: (1) the Deed of Trust, which is dated June 23, 2006 and which was recorded as Document No. 2006-I216911 in the San Francisco County Recorder's Office on July 20, 2006; (2) an assignment, dated July 29, 2013, of the Deed of Trust to Nationstar and which was recorded as Document No. 2013-J755850 in the San Francisco County Recorder's Office on September 13, 2013; and (3) a quitclaim deed, dated February 28, 2008, from Fernando Morales to Nahum Morales and which was recorded as Document No. 2008-I591354 in the San Francisco County Recorder's Office on June 2, 2008. RJN, ECF No. 23.

Under Federal Rule of Evidence 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A "high degree of indisputability is the essential prerequisite" to taking judicial notice and "the tradition [of taking judicial notice] has been one of caution in requiring that the matter be beyond reasonable controversy." Fed. R. Evid. 201(a) & (b) advisory committee's notes (emphasis added). A court, then, may take judicial notice of undisputed facts contained in public records, but it may not take judicial notice of disputed ones. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001); *see also Muhammad v. California*, C-10-1449-SBA, 2011 WL 873151, at *4 (N.D. Cal. Mar. 11, 2011) (denying request for judicial notice of an address contained on a complaint filed in another case because the "underlying facts relevant to Plaintiff's residence are disputed and otherwise do not meet the requirements of Rule 201"). Here, neither party objects to the court taking judicial notice of the existence of these documents, all of which are public records. Therefore, the court takes judicial notice of them.

C 14-03081 LB
ORDER                                    2

here are Uniform Covenant Nos. 1 and 2.[3] Uniform Covenant No. 1 provides in relevant part:

> **1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. . . .
>
> Payment are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payment in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this [Deed of Trust] or performing the covenants and agreements secured by this [Deed of Trust].

*Id.* at 4-5. Uniform Covenant No. 2 likewise provides in relevant part:

> **2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3 [which relates to funds for escrow items]. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this [Deed of Trust], and then to reduce the principal balance of the Note. . . .

*Id.* at 5.

An "Adjustable Rate Rider" was incorporated into the Deed of Trust. *Id.* at 16-20. It states that "[e]ach monthly payment will be applied as of its scheduled due date and will be applied to interest before principal." *Id.* at 17.

Mr. Morales has lived at the Property at least since he executed the Note and Deed of Trust. FAC, ECF No. 18 at 4. On or around February 28, 2008, Mr. Morales executed a quit claim deed

---

[3] In his First Amended Complaint, Mr. Morales also alleges that Nationstar breached Uniform Covenant No. 19, but he fails to mention it in his opposition, even though Nationstar argued in its motion that it does not apply here. In light of Mr. Morales's concession on this point, the court does not address Uniform Covenant No. 19 in this order.

C 14-03081 LB
ORDER                                3

that transferred the property to his son, Nahum Morales. *Id.*; *see* RJN, Ex. C, ECF No. 23-2 (Quitclaim Deed). Mr. Morales continued to live at the Property, however. FAC, ECF No. 18 at 4.

On September 13, 2013, Nationstar became the beneficiary under the Deed of Trust. FAC, ECF No. 18 at 3; *see* RJN, Ex. B, ECF No. 23-1 (Assignment).

From June 2006 (when he refinanced the Property) through March 2014, Mr. Morales made each and every mortgage payment due under the Note and Deed of Trust. FAC, ECF No. 18 at 4. On or around March 12, 2014, Mr. Morales made his regular mortgage payment of $2,180.00 to Specialized Loan Servicing, LLC ("SLS"), which was servicing his loan at that time. *Id.* At or around that same day, SLS sent Mr. Morales a letter stating that, as of April 1, 2014, Nationstar would be the new servicer of his loan. *Id.* The letter also stated that Nationstar "will start accepting payments from you on 4/1/2014." *Id.* Then, on or around March 13, 2014, SLS sent Mr. Morales a letter that confirmed that he made his March 2014 mortgage payment and was current through that month. *Id.* The March 2014 mortgage payment also "was taken out of [Mr. Morales's] bank account on March 14, 2014." *Id.*

On or before April 10, 2014, Mr. Morales contacted Nationstar to make his payment for April 2014. Nationstar, however, "indicated" that it would not accept his payment. *Id.* That same day, Nationstar sent Mr. Morales a letter stating that his loan was past due for March and April 2014. *Id.* Mr. Morales was confused by this, as he was current on his loan and had received confirmation from SLS that his March 2014 had been posted. *Id.* Despite Mr. Morales's attempts to resolve this issue, Nationstar continued to refuse to accept his payment. *Id.*

On April 18, 2014, Nationstar sent Mr. Morales another letter. *Id.* This letter stated that, as of April 18, 2014, Mr. Morales owed $11,722.13 on his loan and that he needed to pay that amount to bring it current. *Id.* This letter confused Mr. Morales further, because his mortgage payments were only $2,180.00 per month, but the amount demanded suggested that he had been behind on his payments for five months. *Id.* at 4-5.

Since April 2014, Mr. Morales has tried to contact Nationstar numerous times to make his monthly payments, to resolve this issue, and to provide proof of all payments on the loan. *Id.* at 5. Nationstar, however, refuses to accept his payment and to correct the error. *Id.* Instead, as of

August 20, 2014 (the date of the filing of the First Amended Complaint), Nationstar claims that Mr. Morales owes over $17,000 on the loan. *Id.*

To resolve this problem, Mr. Morales filed the instant lawsuit on July 8, 2014. Original Complaint, ECF No. 1. He filed a First Amended Complaint on August 20, 2014. FAC, ECF No. 18. In it, he brings claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and for violation of California's UCL. *Id.* at 5-9. He alleges that, as a result of Nationstar's conduct, he has been harmed because he risks losing his Property, his account is growing in arrears, he has accrued improper late fees, his credit has been negatively affected, and he has to spent time and money to resolve this problem. *Id.* at 5, 7.

Nationstar now moves to dismiss Mr. Morales's First Amended Complaint. Motion, ECF No. 22. Mr. Morales opposes the motion. Opposition, ECF No. 26.

## ANALYSIS

### I. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quotation and citation omitted).

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *See Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557.). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be

enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).

If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)). But when a party repeatedly fails to cure deficiencies, the court may order dismissal without leave to amend. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim with leave to amend).

## II. APPLICATION

### A. Claim One: Breach of the Deed of Trust

Nationstar first moves to dismiss Mr. Morales's claim for breach of contract. To state a claim for breach of contract in California, a plaintiff must allege the following elements: (1) existence of a contract; (2) plaintiff's performance or excuse for non-performance; (3) defendant's breach; and (4) resulting damage. *See Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

Nationstar argues that Mr. Morales does not allege that Nationstar breached any provision of the Deed of Trust.[4] Essentially, Nationstar contends that the provisions in the Deed of Trust that Mr.

---

[4] In one sentence in the introduction of its motion, and again in one sentence in its reply, Nationstar suggests that Mr. Morales cannot allege his own performance of the Deed of Trust because he violated Uniform Covenant No. 18 when he transferred the Property to his son. *See* Motion, ECF No. 22 at 3 ("Not only does [Mr. Morales] fail to identify a provision in the Deed of Trust that prohibits the alleged conduct, and would thus lead to a breach of contract action, but he fails to address his own breach of the Deed of Trust, his admitted transfer of the [P]roperty to a third party via quitclaim deed in 2008."); Reply, ECF No. 27 at 2 ("However, as public records show, and the Opposition admits, . . . [Mr. Morales] transferred title of the [P]roperty to a third party, an action that breaches Section 18 of the Deed of Trust and allows the lender to accelerate the loan."). Nationstar, however, never actually expands upon this suggestion or actually argues that Mr.

Morales cites—Uniform Covenant Nos. 1 and 2, and the Adjustable Rate Rider—do not actually require it to accept Mr. Morales's mortgage payment. It says that Uniform Covenant No. 1 "does not address accepting or rejecting payments on a loan that is current, as [Mr. Morales] alleges his was in March 2014." Motion, ECF No. 22 at 6. Rather, Uniform Covenant No. 1 is "entirely permissive" and "merely states that if the loan is in default, and a payment is not sufficient to bring the loan current, a lender may accept or reject it," and "[i]f the lender chooses to accept the payment, it may or may not apply it to the loan." *Id.* at 5. As for Uniform Covenant No. 2, Nationstar says that it bears only upon payments that were both "accepted and applied," and because Mr. Morales alleges that his March 2014 mortgage payment was not applied, and that his April 2014 and subsequent mortgage payments were neither accepted nor applied, it has no bearing here. *Id.* at 6. And as for the Adjustable Rate Rider, Nationstar says that it, like Uniform Covenant No. 1, is "entirely permissive" and "does not place a burden on the lender [to accept] any specific amount." *Id.* at 7.

What Nationstar ignores, however, is that each of these provisions, and the entire Deed of Trust for that matter, presupposes that the lender must accept the borrower's timely mortgage payments on a loan that is current. That no provision says, "Lender must accept Borrower's timely Periodic Payments if Borrower is current on the loan," does not mean that Nationstar can simply refuse to accept Mr. Morales's timely payments on his current loan, as it allegedly did in April 2014. To find otherwise would frustrate the entire basis of the Deed of Trust—that is, the requirement that Mr. Morales timely pay back the loan. If Nationstar has no obligation to accept Mr. Morales's timely

---

Morales does not sufficiently allege that he fully performed his obligations under the Deed of Trust (despite having plenty of pages left in which to do so). Indeed, the section of the motion that argues that Mr. Morales's breach of contract claim fails addresses only Mr. Morales's supposed failure to allege Nationstar's breach of the Deed of Trust. *See* Motion, ECF No. 22 at 5 ("Here, [Mr. Morales] alleges that the contract at issue is the Deed of Trust. However, none of the provisions that [Mr. Morales] identifies in his [First Amended Complaint] meet the third element, as the do not lead to Nationstar's breach."); *id.* at 5-8 (Section A of the motion, which argues that Mr. Morales's breach of contract claim fails, never mentions Mr. Morales's breach of the Deed of Trust). Presumably, this is why Mr. Morales understandably did not address this suggested argument in his opposition. *See generally* Opposition, ECF No. 26. Under these circumstances, the court does not address the suggested argument, either.

C 14-03081 LB
ORDER                                                           7

payments on a current loan, it could, at its own choosing and device, cause Mr. Morales to default on the loan. This, in fact, is what Mr. Morales alleges happened, and such an allegation can give rise to a claim for breach of contract. *See Bewick v. Mecham*, 26 Cal. 2d 92, 99 (Cal. 1945) ("Each party to a contract has a duty to do everything that the contract presupposes that he will do to accomplish its purpose and a duty not to prevent or hinder performance by the other party. . . . A party who prevents fulfillment of a condition of his own obligation commits a breach of contract and cannot rely on such condition to defeat his liability.") (internal citations omitted).

Nationstar also argues that Mr. Morales lacks standing to bring a claim for a breach of the Deed of Trust because he transferred the Property by quitclaim deed to his son in 2008. Nationstar suggests that Mr. Morales would "suffer no injury if he has already been made whole by receiving the full value of the Property from his son, and is using the proceeds from that sale to pay the loan." Motion, ECF No. 22 at 8. It also argues that any foreclosure on the Property would not affect him because he already gave up his ownership of the Property. In his opposition, Mr. Morales refutes Nationstar's unsubstantiated suggestion by pointing out that he received no money from his son but instead gave it to him as a gift. *See* Quitclaim Deed, ECF No. 23-2 (noting that the transfer was a gift). He also argues that he has standing because he still is a party to the Deed of Trust and so he still is liable under it. For that reason, he is the individual whose credit has been affected by the perceived default and who has been charged improper late fees. Nationstar does not respond in its reply to the points that Mr. Morales raises. Instead, Nationstar simply falls back on the arguments it made in its motion. *See* Reply, ECF No. 2. Therefore, the court finds that Mr. Morales has alleged sufficient facts to show that he has standing to sue on his breach of contract claim.

Nationstar also surmises that Mr. Morales may actually have been behind on his mortgage payments, and not current on them like he alleges. *See id.* at 2, 4. This, however, is irrelevant at the pleading stage, as Mr. Morales clearly alleges that he was current on his loan. Thus, Nationstar's suggestion that the court require him to "allege in good faith that he truly never missed a payment," *id.* at 5, is misplaced.

Accordingly, for the reasons stated above, the court finds that Mr. Morales has sufficiently alleged a claim for breach of contract.

**B. Claim Two: Breach of the Implied Covenant of Good Faith and Fair Dealing**

Nationstar also moves to dismiss Mr. Morales's claim for breach of the implied covenant of good faith and fair dealing. It argues that because Mr. Morales did not identify any provision in the Deed of Trust that prevents a lender from refusing to accept payments, he cannot sufficiently allege a claim for breach of the implied covenant of good faith and fair dealing. The court disagrees.

The covenant of good faith and fair dealing is implied in every contract and prevents one party from "unfairly frustrating the other party's right to receive the benefits" of the contract. *See Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 349 (2000). To allege a claim for breach of the covenant of good faith and fair dealing, a plaintiff must allege the following elements: (1) the plaintiff and the defendant entered into a contract; (2) the plaintiff did all or substantially all of the things that the contract require him to do or that he was excused from having to do; (3) all conditions required for the defendant's performance had occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and (5) the defendant's conduct harmed the plaintiff. *See* Judicial Counsel of California Civil Jury Instructions § 325 (2011); *see also Oculus Innovative Sciences, Inc. v. Nofil Corp.*, No. C 06-01686 SI, 2007 WL 2600746, at *4 (N.D. Cal. Sept. 10, 2007).

"Under California law, a claim for breach of the [implied covenant of good faith and fair dealing] is necessarily based on the existence of an underlying contractual relationship. The essence of the covenant is that no party to the contract will do anything which would deprive the others of the benefits of the contract." *Wolf v. Wells Fargo Bank, N.A.*, No. C11–01337 WHA, 2011 WL 4831208 at *4 (N.D. Cal. Oct. 12, 2011) (citing *McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th 784, 799 (2008)). To establish a breach of the covenant, then, a plaintiff must establish the existence of a contractual obligation, along with conduct that frustrates the other party's rights to benefit from that contract. *Id.*

Mr. Morales alleges that Nationstar refuses to accept his timely mortgage payments even though he is current on his loan (or at least he was, until Nationstar starting refusing his payments). As explained above, such a refusal clearly frustrates his rights to benefit from the Deed of Trust. Indeed, to find otherwise would be to give Nationstar the power to unilaterally force Mr. Morales

1  into default.  Mr. Morales's has sufficiently alleged his claim.

2  **C. Claim Three: Violation of the UCL**

Finally, Nationstar moves to dismiss Mr. Morales's UCL claim because it is based on his breach of contract and breach of the implied covenant of good faith and fair dealing claims which (Nationstar argues) also fail.  The court, however, has found that Mr. Morales's breach of contract and breach of the implied covenant of good faith and fair dealing claims survive.  Thus, his UCL claim also survives.

## CONCLUSION

Based on the foregoing, the court **DENIES** Nationstar's motion to dismiss.  Nationstar must answer Mr. Morales's complaint within 14 days from the date of this order.  *See* Fed. R. Civ. P. 12(a)(4)(A).

**IT IS SO ORDERED.**

Dated: November 20, 2014

_____
LAUREL BEELER
United States Magistrate Judge